UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

Robert E.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,[1]

        Defendant.

1:20-cv-06882-NLH

**OPINION**

---

**APPEARANCES:**

KATHRYNE HEMMINGS POPE
HOFFMAN DIMUZIO
25 HUNTER STREET
P.O. BOX 7
WOODBURY, NJ 08096

    *On behalf of Plaintiff*

EDA GIUSTI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, May 30, 2015.  For the reasons stated below, this Court will reverse that decision and remand the matter for further proceedings.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On April 21, 2016, Plaintiff, Robert E., protectively filed an application for DIB,[3] alleging that he became disabled on May 30, 2015.  Plaintiff claims that he can no longer work as an auto mechanic, truck operator, supervisor of labor, and a bicycle assembler because of his impairments of ankylosing spondylitis, left knee pain, status post-arthroscopic surgery of the left knee, hypertension, irritable bowel syndrome, obesity,

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

2

major depressive disorder, and generalized anxiety disorder.[4]

Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an ALJ, which was held on October 23, 2018.  On December 7, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on January 31, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S.

---

[4] On the alleged onset date of May 30, 3015, Plaintiff was 32 years old, which is defined as "a younger individual" (age 18-49).  20 C.F.R. § 404.1563.

3

389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker,

4

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

5

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[5] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

---

[5] The regulations were amended for various provisions effective March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

6

process is summarized as follows:

   1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

   2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

   3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

   4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

   5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has

7

proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of ankylosing spondylitis,[6] left knee pain, and status post arthroscopic surgery of the left knee were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level,[7] with certain exertional restrictions. At steps

---

[6] Ankylosing spondylitis is a form of arthritis that primarily affects the spine, although other joints can become involved. It causes inflammation of the spinal joints that can lead to severe, chronic pain and discomfort. See https://spondylitis.org/About-Spondylitis/Types-of-Spondylitis/Ankylosing-Spondylitis/.

[7] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

four and five, the ALJ determined that Plaintiff was not able to perform his past relevant work, but Plaintiff's RFC rendered him capable of performing other jobs in the national economy, such as an assembler, inspector, and sorter. The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff argues that the ALJ erred in his decision because he failed to consider as severe at step two Plaintiff's medically determinable impairment of irritable bowel syndrome (IBS) and his medically determinable mental health impairments of anxiety and depression. Plaintiff further argues that the ALJ failed to incorporate limitations consistent with those impairments in the RFC assessment.[8] The Court does not find error in the ALJ's step two analysis, but the Court agrees that the ALJ erred in his RFC determination by failing to account for these impairments.[9]

"The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'" McCrea v. Comm'r of

---

[8] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

[9] Plaintiff presents several other arguments on appeal. Because the incomplete RFC determination undermines the analysis of steps four and five, see 20 C.F.R. § 416.20(b)-(f) ("[T]he Commissioner will consider the claimant's [RFC], age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy."), the Court declines to opine on the other issues raised in Plaintiff's appeal in this procedural posture.

9

Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004) (citation omitted).  Step two is not a high hurdle for an applicant, but he must demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004) (citing SSR 85-28).

As noted above, at step two, the ALJ found that Plaintiff's impairments of ankylosing spondylitis, left knee pain, and status post arthroscopic surgery of the left knee were severe.  The ALJ considered Plaintiff's impairments of IBS, anxiety, and depression to be medically determinable impairments, but because he determined that they would each have a minimal effect on Plaintiff's ability to work, the ALJ found them to be non-severe impairments.  (R. at 52.)

Typically, when an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment, or the determination that an impairment is not severe, is harmless error.  Torres v. Commissioner of Social Security, 2018 WL 1251630, at *5 (D.N.J. 2018) (citing Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at

10

Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005)).

The error at step two is only harmless, however, where the ALJ has considered the medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case. Id. This is because the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the Court finds that the ALJ did not err at step two, as he explained that even though Plaintiff suffered from the medically determinable impairments of anxiety, depression, and IBS, which is in part a physical manifestation of his mental health impairments (R. at 67, 68, 449), those impairments did not meet the severity requirement of step two in that they did not independently "significantly limit [his] physical or mental

11

ability to do basic work activities." See 20 C.F.R. § 404.1522 (defining non-severe impairments and basic work activities). The ALJ properly addressed the "Paragraph B" criteria with regard to Plaintiff's anxiety and depression (R. at 15-16),[10] and the ALJ sufficiently explained why he determined that Plaintiff's IBS did not constitute a severe impairment on its own (R. at 13).

The ALJ erred, however, in the subsequent RFC determination by failing to account for Plaintiff's severe and non-severe impairments in combination.

The ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: The claimant must be able to adjust his position every 45 minutes while remaining at or near his workstation. He can occasionally climb ramps and stairs, but must never climb ladders, ropes, or scaffolds. He can frequently balance, but only occasionally stoop, kneel, crouch, or crawl. The claimant can occasionally use the left lower extremity for pushing, pulling, or operating

---

[10] To properly consider Plaintiff's mental impairments at step two, an ALJ is required to undertake a Paragraph B assessment. See Marrollo v. Commissioner of Social Security, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.").

> foot controls. The claimant is limited to frequent use of his bilateral hands for fine fingering or grasping/handling of small objects. He must avoid concentrated exposure to extreme cold, wet, or damp conditions. He must also avoid concentrated exposure to vibration. The claimant must be able to use a cane for ambulation to and from his workstation. He will be off task for 5% of the workday, in addition to normal breaks in an 8-hour workday.

(R. at 18.)

The ALJ's RFC determination solely addresses Plaintiff's exertional limitations arising from his ankylosing spondylitis, left knee impairments, and other physical impairments, such as his obesity and his use of a case. The RFC improperly fails to account for Plaintiff's non-exertional impairments of anxiety and depression, or the effects of Plaintiff's IBS. Although Plaintiff's anxiety, depression, and IBS were not considered severe impairments at step two, the ALJ found them to be medically determinable impairments.[11] As such, those impairments have some appreciable impact on Plaintiff's RFC when considered collectively with all of Plaintiff's impairments. Indeed, that is why the regulations require an ALJ to consider severe medically determinable impairments in combination with non-

---

[11] POMS, DI 25205.005 Evidence of a Medically Determinable Impairment ("A medically determinable physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. The impairment must be established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source, not on an individual's statement of symptoms.").

13

severe medically determinable impairments in the RFC determination.[12]

Here, the ALJ explained how he viewed Plaintiff's anxiety and depression in the context of formulating Plaintiff's RFC:

> The claimant's allegations regarding his depression and anxiety are not consistent with any of the mental health treatment notes.  He alleged frequent auditory hallucinations at the December 2016 psychiatric consultative examination, but denied any psychosis, including visual or auditory hallucinations, to his treating outpatient mental health providers during his initial evaluation only one month earlier in November 2016. He alleges panic attacks occurring two to three times per week, which often feel as if he is going to die. However, he never went to the hospital or called 911 during or after any of these panic attacks. Furthermore, the evidence shows only limited outpatient mental health treatment for a few months in late 2016 and early 2017. His own primary care physician noted that he had no psychiatric medical conditions in her August 2017 medical source statement.

(R. at 23.)  The ALJ does not mention Plaintiff's IBS in his articulation of evidence to support his RFC determination.

Putting aside the fact that the record contains significantly more evidence to support the limiting nature of Plaintiff's anxiety and depression, as well as the manifestation of those impairments through Plaintiff's IBS, than what is

---

[12] 20 C.F.R. § 404.1545 ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. . . We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").

14

contained in this RFC analysis,[13] the ALJ's RFC assessment undermines his findings at step two. While the ALJ found these impairments to be medically determinable at step two, and found, at least as to Plaintiff's anxiety and depression, that they "could reasonably be expected to produce some of the alleged symptoms" (R. at 22, 23), in the RFC assessment the ALJ effectively recasts those impairments as having no symptoms at all that need to be considered. That is directly contrary to the ALJ's obligation under 20 C.F.R. § 404.1545.[14]

    The regulations are clear: At step two, an ALJ is required to determine (1) whether an impairment is medically determinable, and if so (2) whether that medically determinable impairment is severe or non-severe. If a claimant has demonstrated at least one severe medically determinable impairment, the ALJ must consider that severe impairment in combination with all the additional medically determinable

---

[13] Plaintiff's brief details, with citation to the record, the medical records and Plaintiff's testimony regarding the impact and treatment of his anxiety, depression, and IBS. (Docket No. 13 at 25-29.)

[14] Cf., Ungemach, 2019 WL 3024858, at *6-7 ("Other than Plaintiff's self-reporting that she experiences migraines, which her physicians have recorded in their records, Plaintiff does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning. The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them.").

15

impairments in combination while formulating the RFC.  See SSR 16-3p.  An ALJ may only disregard an impairment in the RFC determination if that impairment has not been found to be medically determinable and has no demonstrable symptoms.  See Diciano v. Commissioner of Social Security, 2019 WL 6696523, at *4 (D.N.J. 2019) (explaining that "[i]t is true that an ALJ must assess a claimant's severe impairments in combination with non-severe impairments," but "an ALJ does not have to consider an alleged impairment if he does not find such an impairment is medically determinable") (citing 20 C.F.R. § 404.1529; POMS, DI 25205.005 20 C.F.R. § 404.1545(a)(2)).

    The ALJ in this case completely failed to consider Plaintiff's IBS in the RFC analysis.  The ALJ did consider Plaintiff's anxiety and depression, but he did so in a way that transformed those impairments from medically determinable impairments with some symptoms that required accommodation in the RFC to non-medically determinable impairments that did not require any accommodation in the RFC.  This is reversible error.[15]  See, e.g., Scott v. Commissioner, 2019 WL 2574974, at

---

[15] Defendant argues that Plaintiff's mental limitations were accounted for because the vocational expert testified that Plaintiff would be capable of performing the suggested jobs, which accommodated for limitations of as understanding and remembering simple, routine instructions; carrying out repetitive tasks; making simple work-related decisions and using common sense; dealing with minor or few changes in routine work settings; and having only occasional interaction with coworkers

\*5 (D.N.J. 2019) ("At Step Two, the ALJ found that plaintiff had medically determinable mental impairments of depression and anxiety.  The ALJ then determined that Plaintiff's mental impairments were non-severe with mild limitations in areas of understanding, remembering, and applying information, interacting with others, and concentration.  However, during her RFC formulation, the ALJ contradicted her findings at Step Two by stating that the medical record did not support a medically determinable mental impairment.  Although the ALJ briefly discussed Plaintiff's [mental] impairments during the RFC determination, she did not make any discernable conclusions regarding the impact on Plaintiff's [mental] impairments in combination with his physical impairments.  Without the ALJ performing the analysis, the Court also cannot determine whether

---

and the general public.  This argument bypasses the requirement that the ALJ - and not the VE or anyone else - must formulate Plaintiff's RFC and specifically accommodate for symptoms of medically determinable impairments in the RFC.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c) (explaining that the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner).  The VE may have considered the impact of Plaintiff's non-exertional limitations caused by his mental impairments on his ability to work, but the ALJ did not.  Instead, the ALJ effectively found, as discussed herein, that Plaintiff did not suffer from any symptoms from his mental health impairments, despite stating several times in his decision that those impairments actually did cause some symptoms.  (R. at 22, 23.)  Moreover, this argument does not address Plaintiff's IBS, which, as also discussed herein, was a medically determinable impairment unaddressed by the ALJ in the RFC.

17

the ALJ's decision is supported by substantial evidence.").

This Court cannot weigh the evidence or substitute its conclusions for those of the ALJ, or independently determine the impact of Plaintiff's non-severe impairments in combination with his severe impairments on his RFC.[16]  Without the ALJ performing that analysis, this Court cannot determine whether the ALJ's decision is supported by substantial evidence.  Consequently, the matter must be remanded for further proceedings so that the ALJ may properly consider how Plaintiff's non-severe impairments affect his RFC and his capability to perform work that exists in the national economy.[17]

### III. Conclusion

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed.  The

---

[16] See Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ).

[17] When an ALJ has failed to apply the correct legal standards and his conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991) (providing that under Sentence Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").  The SSA is in a better position than this Court to Plaintiff's RFC and the remaining steps in the sequential step analysis.

18

matter shall be remanded for further consideration consistent with this Opinion.  The Court expresses no view as to whether, after a full review and explanation of the record evidence, Plaintiff should be found disabled or not under the applicable regulations.

    An accompanying Order will be issued.

Date: November 12, 2021       s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.